Isadore Bookstein, J.
This is a proceeding by petitioners under subdivision 1 of section 1296 of article 78 of the Civil Practice Act to compel respondent, the Commissioner of Education of the State of New York, to perform a duty which allegedly he has failed to perform. The duty which petitioners would compel him to perform is to revoke and rescind a certain regulation allegedly enforced in the public schools of the State of New York, “ requiring the use of the phrase ‘ under God ’ in the Pledge of Allegiance to the flag of the United States of America, and directing him to reestablish the use of said pledge, without that phrase ”.
The papers fail to indicate any demand or request for revocation or rescission prior to the commencement of this proceeding.
No statutory duty has been shown which requires respondent to rescind or revoke the regulation. So it cannot be said *70 that respondent has failed to perform a duty imposed upon him by statute.
But petitioners contend that such duty is imposed on respondent by the First and Fourteenth Amendments to the United States Constitution and by section 3 of article I and section 4 of article XI of the New York State Constitution.
Section 802 of the Education Law, as amended by chapter 177 of the Laws of 1956, provides, in part: “1. It shall be the duty of the commissioner of education to prepare, for the use of the public schools of the state, a program providing for a salute to the flag, and a pledge of allegiance to the flag,[1] for instruction in its correct use and display and such other patriotic exercises as may be deemed by him to be expedient, under such regulations and instructions as may best meet the varied requirements of the different grades in such schools ”. (Emphasis supplied.)
Respondent had, prior to the 1956 amendment, promulgated regulation 150 (par. 5) providing: “ It is recommended that the schools use the following pledge to the flag: [1]1 pledge allegiance to the flag of the United States of America and to the Republic for which it stands, one Nation, indivisible, with liberty and justice for all ’ ”.
This recommended pledge is the precise pledge enacted by the Congress of the United States. (U. S. Code, tit. 36, § 172.)
On June 14, 1954, the Congress amended section 172 by inserting, between the words “Nation ” and “ indivisible ”, the words “ under God ”. The pledge of allegiance to the flag as amended by the Congress now reads: “ I pledge allegiance to the flag of the United States of America and to the Republic for which it stands, one Nation under God, indivisible, with liberty and justice for all.”
Thereafter respondent amended paragraph 5 of regulation 150, recommending a pledge in the words enacted by the Congress.
Petitioners object to the use of the words, “under God” in the pledge of allegiance.
They have no objection to the former pledge but contend that respondent has the duty to revoke this revised regulation, deleting the words “ under God ” from the pledge recommended for use in the public schools and this duty petitioners say he has failed to perform.
It is clear that in making and amending regulation 150 in accordance with the Education Law and with an act of Congress, respondent was performing his duties.
*71 Respondent has made a regulation pursuant to express direction of a statute of this State and in conformance with a law of the United States. How then can he be charged with failing to perform his duty?
Petitioners’ contention, in final analysis, is that the present pledge of allegiance to the flag of the United States violates the First Amendment to the United States Constitution (which by the 14th Arndt, binds this State), and, also violates the New York State Constitution. Therefore, petitioners contend respondent cannot and should not perform the duties which the Legislature of the State of New York has directed him to perform, since, by amending the regulation to include the words “under God ”, the regulation now contravenes the First Amendment.
To sustain that contention implies respondent has not only the right, but the duty, to determine the constitutionality of an act of the State Legislature or of the Congress and to refuse to perform, where in his judgment, such act is unconstitutional.
Clearly, this is in the exclusive domain of the judiciary. It is not a function of administrative officials.
As I read the petition, no claim is asserted that either the act of the Legislature or the act of Congress above referred to violates the Constitution of the United States or of the State of New York. The petition confines its charge to the regulation promulgated by the respondent and asserts the regulation contravenes those Constitutions.
The First Amendment to the United States Constitution, so far as pertinent, provides: “ Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ”. The Fourteenth Amendment makes the First Amendment applicable to and binding on the State of New York.
Section 3 of article I of the New York Constitution provides: “ The free exercise and enjoyment of religious profession and worship, without discrimination or preference, shall forever be allowed in this state to all mankind; and no person shall be rendered incompetent to be a witness on account of his opinions on matters of religious belief; but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness, or justify practices inconsistent with the peace or safety of this state ”.
Section 4 of article XI of the New York Constitution provides: “ Neither the state nor any subdivision thereof shall use its property or credit or any public money, or authorize or permit either to be used, directly or indirectly, in aid or maintenance, *72 other than for examination or inspection, of any school or institution of learning wholly or in part under the control or direction of any religious denomination, or in which any denominational tenet or doctrine is taught, but the legislature may provide for the transportation of children to and from any school or institution of learning ”.
Petitioners claim that freethinkers, nonbelievers, atheists and agnostics cannot be compelled to recite the present pledge of allegiance because it includes the words “ under God ”, and such compulsion violates the aforesaid constitutional provisions.[2]
It is elementary that the First Amendment to the United States Constitution prohibits the establishment of religion and erects a wall of separation between church and State which may not and must not be breached.
In McCollum v. Board of Educ. (333 U. S. 203) the public schools were used for avowed religious instructions by members of the Protestant, Roman Catholic and Jewish faiths, although attendance at such instruction was only on request of parents. The United States Supreme Court declared the system unconstitutional because public school buildings were there being used for dissemination of religious doctrines at the taxpayers’ expense.
In Board of Educ. v. Barnette (319 U. S. 624) the United States Supreme Court, at page 638, indicated approval of the Congressional enactment of the pledge of allegiance but declared the West Virginia flag salute law unconstitutional. In that instance, however, the salute to the flag was compulsory. The court pointed out at page 629: ‘1 Failure to conform is ‘ insubordination ’ dealt with by expulsion. Readmission is denied by statute until compliance. Meanwhile the expelled child is ‘ unlawfully absent ’ and may be proceeded against as a delinquent. His parents or guardians are liable to prosecution, and, if convicted are subject to fine not exceeding $50 and jail term not exceeding thirty days ’ ’.
The regulation under attack here has no compulsory aspect. No penalties attach to a failure or refusal to recite the pledge. *73 The pledge is made voluntarily and no penalties are imposed for noncompliance.
There are two general bases for attacking a statute or regulation on the grounds that it violates the First Amendment to the United States Constitution or the sections of the New York Constitution heretofore referred to:
First: Where a person is required to submit to some religious rite or instruction or is deprived or threatened with deprivation of his freedom for resisting that unconstitutional requirement; Second: Where a person is deprived of property for unconstitutional purposes (such as direct or indirect tax to support a religious establishment). (See concurring opinion of Mr. Justice Jackson in the McCollum case supra, pp. 232-233.)
Here, the second basis cannot be successfully urged. No tax or deprivation of property is involved whether or not the words “under God ” are used in the pledge. We are, therefore, obliged to consider whether the first basis supports petitioners ’ contention.
If I properly apprehend the intent, design and purposes of the First Amendment, it was conceived to prevent and prohibit the establishment of a State Religion; it was not intended to prevent or prohibit the growth and development of a Religious State.
This concept finds judicial support in Holy Trinity Church v. United States (143 U. S. 457, 470) where the court says “ this is a religious nation ’ \
In 1951, that court said in Zorach v. Clauson (343 U. S. 306, 313): “ We are a religious people whose institutions presuppose a Supreme Being ”.
The Declaration of Independence refers to “ the Supreme judge of the world ’ ’, and 11 the protection of Divine Providence ”. Lincoln, at Gettysburg, spoke of “ this nation, under God”. Even the preamble to the New York Constitution expresses gratitude “to Almighty God for our Freedom ”. Indeed, the presidential oath of office concludes, “ So help me, God ’ ’. By act of Congress, our coins are inscribed, ‘ ‘ In God we trust ”. (U. S. Code, tit. 31, § 324.)
If petitioners’ contention be sound, it may be wondered whether the public school curriculum might properly include the Declaration of Independence and the Gettysburg Address. Could “America” (“Protect us by thy might, Great God, our King! ”) be sung in a public school without offending the First Amendment? And might not the presidential oath of office have questionable constitutional status?
*74 These questions find their answer in House Report No. 1693, note 2 (supra). There, the committee on judiciary notes: “ The Supreme Court has clearly indicated that the references to the Almighty which run through our laws, our public rituals, and our ceremonies in no way flout the provisions of the first amendment (Zorach v. Clauson (343 U. S. 306, 312-313). In so construing the first amendment, the Court pointed out that, if this recognition of the Almighty was not so, then even a fastidious atheist or agnostic could object to the way in which the Court itself opens each of its sessions, namely, ‘ Gtod save the United States and the Honorable Court ’ (id., 313) ”.
But evidently relying on Mr. Justice Frankfurter’s concurring opinion in the McCollum case (supra, p. 227), petitioners urge there is a compulsion which operates and, in substance, ‘[1] requires ’ ’ that a child recite the words ‘ ‘ under Grod ’ ’, when reciting the pledge of allegiance. In the circumstances of the McCollum case, Mr. Justice Frankfurter said, “ That a child is offered an alternative may reduce the constraint; it does not eliminate the operation of influence by the school in matters sacred to conscience and outside the school’s domain. The law of imitation operates, and non-conformity is not an outstanding characteristic of children. The result is an obvious pressure upon children ’ ’.
Whatever the force of that argument in the circumstances of the McCollum case, here, the child of a nonbeliever may simply omit the words, “ under Grod ”, in reciting the pledge. His “ non-conformity ”, if such it be, will not, in the circumstances of this case, set him apart from his fellow students or bring “ pressure ” to bear in any real sense.
But assuming the contrary, Mr. Justice Jackson’s concurring opinion in the McCollum case is nicely apposite. He there observed (pp. 232-233): “ The complaint is that when others join and he does not, it sets him apart as a dissenter, which is humiliating. Even admitting this to be true, it may be doubted whether the Constitution which, of course, protects the right to dissent, can be construed also to protect one from the embarrassment that always attends nonconformity, whether in religion, politics, behavior or dress. Since no legal compulsion is applied to complainant’s son himself and no penalty is imposed or threatened from which we may relieve him, we can hardly base jurisdiction on this ground ”.
To grant this application ‘ ‘ would be preferring those who believe in no religion over those who do not ”. (Zorach v. Clauson, supra, p. 314.) The First Amendment does not require this.
*75 Petitioners’ right to disbelieve is guaranteed by the First Amendment, and neither they nor their children can be compelled to recite the words “ under God ” in the pledge of allegiance. But the First Amendment affords them no preference over those who do believe in God and who, in pledging their allegiance, choose to express that belief.
Petition dismissed upon the merits, with costs.

 Italicized words were added to section 802 by chapter 177 of the Laws of 1956.

 The House of Representatives Report Ho. 1693 (83d Cong., 2d Sess.) on the bill to amend the pledge of allegiance by the inclusion of the words “ under God” demonstrates that the Committee on the Judiciary considered the question of constitutionality. Its report set forth the purpose of the law and concluded the act was constitutional, emphasizing it was inspired by the fact that “ At this moment of our history * * * our American Government and the American way of life are under attack by a system whose philosophy is at direct odds with our own”. Concededly, that determination of constitutionality is not binding but it does signify that the matter was carefully considered.