Elbert T. Gallagher, J.
In the year 1956 in the Village of Ossining a committee was formed, known and hereinafter designated as the Creche Committee. Its membership consisted of Catholics, Protestants and Jews. Its purpose was to solicit funds to enable the committee to erect, a Nativity Scene within the village during the Christmas season.
An application was made by the committee to the Board of Education of Ossining School District No. 1 for permission to construct the scene on the lawn of the Ossining Junior-Senior High.School. By resolution duly adopted the board granted the committee’s request and the Creche was erected in December, 1956, a few days before school closed for Christmas vacation. It was dismantled before school reconvened. No suit was brought to restrain the board or to obtain an adjudication as to the constitutionality of its resolution.
In 1957 the Creche Committee renewed its application but stipulated that the Creche would not be erected or maintained while school was in session. The Board of Education again passed a resolution authorizing the erection of the ■ Creche on the lawn of the said school, after which this action was commenced for a permanent injunction and declaratory judgment. It is contended by the plaintiffs that the action of the school board violates the First and Fourteenth Amendments .to the United States Constitution and section 3 of article I of the Constitution of the State of New York.
During the pendency of the action, the plaintiffs moved for an order restraining and enjoining, pendente lite, the defendant Board of Education from authorizing or permitting the erection of a Creche on any property subject to its jurisdiction and to rescind any permission previously granted in that regard. In denying the application Mr. Justice Coyne stated as follows (14 Misc 2d 955, 957): “Without prejudging the merits of the controversy, the following observation would appear germane: The constitutional prohibition relating to separation of church and State does not imply an impregnable wall or cleavage completely disassociating one from the other. While it is necessary that there be a separation of church and State, it is not necessary that the State should be stripped of all religious sentiment. It may be a tragic experience for this country and for its conception of life, liberty and the pursuit of happiness if our people lose their religious feeling and are *1017 left to live their lives without faith. (Doremus v. Board of Educ. of Borough of Hawthorne, 5 N. J. 435.) The Constitution does not demand that every friendly gesture between the church and State should be discountenanced; nor that every vestige of the existence of God be eradicated. "Whether or not the constitutional prohibitions against laws ‘ respecting an establishment of religion,- or prohibiting the free exercise thereof ’ (U. S. Const., 1st Arndt.), as applied to States (U. S. Const., 14th Amdt.; N. Y. Const., art. I, § 3), are infringed under, the particular facts and circumstances existing in the case at bar, may only be determined after a full and plenary trial predicated upon a complaint containing sufficient allegations of damage.”
The court is of the opinion that of all the plaintiffs only one has alleged and proved sufficient interest in the controversy to entitle him to maintain this action.
The complaint alleges that all of the plaintiffs are residents and taxpayers of the school district. That allegation was put into issue by the defendants’ answer. In most cases there was a failure by the plaintiffs to prove the fact alleged. In some cases the evidence establishes the contrary. Even were it admitted, however, that most if not all of the plaintiffs are taxpayers of the district, that fact alone would not give them a sufficient, interest to maintain the suit. The erection of the Creche during the school holiday was not financed by any public appropriation, and there is no evidence that it has added any sum whatever to the cost of conducting the school or that any plaintiff is, will or possibly can be- out of pocket because of it. (Doremus v. Board of Educ., 342 U. S. 429.)
Moreover, the law in this State is long established that the interest which a taxpayer shares with all others in the community is not such a special, peculiar or personal interest as to entitle him to challenge in the courts the constitutionality of an. act of a public official or body. (Roosevelt v. Draper, 23 N. Y. 318; Schieffelin v. Komfort, 212 N. Y. 520.) This is true whether the suit be in the form of an action for an injunction (Matter of Reynolds, 202 N. Y. 430) or in the form of an action for declaratory judgment (Bull v. Stichman, 273 App. Div. 311, affd. 298 N. Y. 516).
An exception to this rule is provided by section 51 of the General Municipal Law which. specifically grants a right of action to a taxpayer to prevent an illegal act or to prevent waste or injury to public property or funds on the part of an official of any municipality. However, that section does not apply to actions against a Board of Education. (Blackburn v. Clements, *1018 297 N. Y. 971; Brooks v. Wyman, 246 N. Y. 534; Schnepel v. Board of Educ. of City of Rochester, 302 N. Y. 94.)
The complaint must be dismissed as against those plaintiffs who have alleged no interest other than that they are residents and taxpayers. It must also be dismissed as against those whose claim to an interest is that they have children attending the grade schools within the district. Whether their children will ever even attend the Ossining Junior-Senior High School is entirely speculative and there is nothing in the record to indicate that the Board of Education has ever authorized or considered the erection of a Creche on other school property. In any event, those allegations were put in issue and with one possible exception there is no proof to sustain them.
Two of the plaintiffs have alleged and testified that they are the parents of children attending the Junior-Senior High School. However, it appears that the plaintiff, Puner, did not have a child attending the school at the time of the act complained of. The complaint must likewise be dismissed as to him.
The remaining plaintiff, Stanley M. Estrow, is not entitled under the law to a permanent injunction. A basic requirement for such a decree is the danger of irreparable injury. (Kane v. Walsh, 295 N. Y. 198; Thomas v. Musical Mut. Protective Union, 121 N. Y. 45.) No such danger is showm in the case at bar.
Moreover, the act which plaintiff seeks to enjoin was terminated when the Creche was removed from the school grounds in January, 1958. It does not appear that anyone has permission at the present time to erect or maintain a Creche on school property or that there is any pending application for such permission. Under the circumstances there is at present nothing to enjoin. (Goetz v. City of Mount Vernon, 271 App. Div. 986.) “Injunctive relief should not be granted against a fact accomplished.” (Sivakoff v. Sivakoff, 280 App. Div. 106, 108.)
Howover, plaintiff will not be deprived of his day in court. While the act which he seeks to enjoin terminated with the removal of the Creche in January, 1958, the controversy did not necessarily end at that time. The Creche was not removed because of any change in the policy of the board, but because of the very nature of the display. A Creche is ordinarily exhibited only during the short Christmas season. The Creche which was erected on the school grounds in 1957 was up for only a few days during the vacation period. Because of this it would *1019 be extremely difficult for plaintiff to ever obtain a judicial determination of the constitutional question, even if the Creche were authorized year after year, unless the court were to view it as a continuing controversy. For that reason the complaint will be considered on the merits insofar as it seeks declaratory relief.
Proof was taken upon the trial as to the situation which existed in 1956 and the court has considered such proof in determining that there is a continuing justiciable dispute. The constitutional question, however, must be decided on the facts which existed or were threatened at the time this action was commenced in December, 1957. The evidence establishes that the 1957 Creche was not erected or displayed while school was in session. The evidence further establishes that no public funds were expended, nor was the time of any public employee involved in its erection or display. Even the electricity used in the illumination of the crib was paid for entirely by private contribution.
The testimony reveals that it has long been a tradition to receive and grant requests from various groups to erect signs or symbols on the school lawn. This privilege has been accorded to the Heart Fund, the Cancer Fund and the American Red Cross, among others. No similar privilege has been requested by any other religious group nor denied by the school board.
The First Amendment, so far as pertinent, provides: “Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ”.
The United States Supreme Court has held that by virtue of the Fourteenth Amendment to the Federal Constitution the prohibitions of the First Amendment are applicable to actions of the States and their subdivisions. (Cantwell v. Connecticut, 310 U. S. 296.)
Section 3 of article I of the New York State Constitution reads, in part, as follows: ‘‘ The free exercise and enjoyment of religious profession and worship, without discrimination or preference, shall forever be allowed in this state to all mankind ”.
Much has been written in recent years concerning Thomas Jefferson’s reference in 1802 to “ a wall of separation between church and State.” It is upon that “wall” that plaintiffs seek to build their case. Jefferson’s figure of speech has received so much attention that one would almost think at times that it is to be found somewhere in our Constitution. Courts and authors have devoted numerous pages to its interpretation. This court has no intention of engaging in a dispute among *1020 historians as to the meaning of a metaphor. The only'language which we are called upon to interpret and apply is the plain ■ language quoted above from the Federal and State Constitutions.
Reason and precedent have given these provisions a somewhat broader meaning than a literal interpretation would indicate. Nevertheless, there appear to be two general bases- for attacking a statute or resolution on the grounds that it violates the First Amendment to the United States Constitution or section 3 of article I of the State Constitution: first: where a person is required to submit to some religious rite or instruction or is deprived or threatened with deprivation of his freedom for resisting that unconstitutional requirement; second: where a" person is deprived of property for unconstitutional purposes (such as a direct or indirect tax to support a religious establishment). (Matter of Lewis v. Allen, 5 Misc 2d 68; concurring opinion of Mr. Justice Jackson, McCollum v. Board of Educ., 333 U. S. 203, 232-233.)
The second basis cannot be seriously or successfully tirged in the case at bar. As previously mentioned, the erection and display of the Creche involved the use of no public fund's nor the time of any school personnel. We consider then whether" the first basis supports plaintiff’s objection. '
Plaintiff points out that section 3212 of the Education Law requires him to send his minor children to school' and that failure or refusal to do so renders him subject to punishment. He contends further that the Creche is a sectarian religious symbol. He concludes that ‘1 pupils compelled by law to attend public school classes for secular instruction, through such displays are subjected to sectarian religious influences and are obliged to attend and participate in the veneration of sectarian religious symbols of a religious faith to which some of them do not subscribe.” Witnesses for the plaintiff testified that what is symbolized by the Creche is inconsistent with the religion of plaintiff and his children.
The fallacy in plaintiff’s argument is apparent in view of the fact that school was not in -session during the period when the Creche was displayed. Moreover, the court is of the opinion that the influence, if any, of a religious symbolism is' inescapable during the Christmas season. It would be difficult to say that as a practical matter any greater • influence exists by virtue of the fact that the symbol is permitted on public as well as private property.
Plaintiff has attempted to bring this case within the decision of the United States Supreme■ Court in McCollum v. Board of *1021 Educ. (333 U. S. 203, supra). That case involved the actual teaching of religion in the public schools, during school hours and by sectarian instructors. As expressed by Mr. Justice Frankfurter in his concurring opinion (p. 227): religious instruction was ‘ ‘ patently woven into the working scheme of the school.” The program was held unconstitutional. The facts were in no way comparable to those in the case at bar.
Plaintiff claims that the presence • of the Creche on school property constitutes “ teaching ” and, therefore, that the McCollum decision applies. Witnesses in the field of education testified that symbols are often employed as a means of education.
■There can be no doubt that symbols are frequently and effectively employed in our schools as a teaching aid. Teaching, however, presupposes the presence of students and we must again repeat that school was not in session while the Creche was displayed in 1957. In any event the argument would be of little validity in the absence of evidence that instruction was given as to the meaning of the Creche or that it was in fact employed as a means of teaching.
Both of the bases for attacking a statute or resolution as being in violation of the First Amendment were present in the McCollum case. The use of public funds was involved, at least to the extent that the time of school personnel was utilized in the administration of the plan, and while religious instruction was offered on a voluntary basis the court found inherent elements of compulsion. In the words of Mr. Justice Frankfurter there was “an obvious pressure upon children to attend.” (McCollum, supra, p. 227.) Neither element is present in the case at bar.
The Creche is undoubtedly a religious symbol. In viewing it, however, we are all free to interpret its meaning according to our own religious faith.: If any public body were to limit that freedom or if any public institution were to give instruction as to its meaning there would, unquestionably, be a constitutional violation. That, however, is not this case. Here the school board has done no more than to make a small portion of its property available for the display. To that extent they have accommodated a religious, though nondenominational, group. However, the accommodation of religious groups is not per se unconstitutional. (Zorach v. Clauson, 343 U. S. 306.) If such accommodation violates the doctrine of absolute separation between church and State, then it is time that that doctrine be discarded once and for all. Absolute separation is not and never *1022 has been required by the Constitution. Mr. Justice Douglas, speaking for thellnited States Supreme Court in its most recent expression of opinion on the subject, stated (Zorach v. Clauson, supra, p. 312): “The First Amendment, however, does not say that in every and all respects there shall be a separation of church and State. Rather, it studiously defines the manner, the specific ways, in which there shall be no concert or union or dependency one on the other. That is the common sense of the matter. Otherwise the state and religion would be aliens to each other — hostile, suspicious, and even unfriendly.”
By no process of legal reasoning could the permission granted to the Creche committee be construed as an establishment of religion or a denial of the right to worship freely and without discrimination. The site was chosen by the committee not because it was public school property, but because of its location and the amount of space available. The board granted the committee’s application in the same spirit of co-operation which prompted it to accord a similar privilege to many other groups within the community. In this regard the facts are not unlike those in Matter of Lewis v. Mandeville (201 Misc. 120). There, the firehouse was made available for Catholic and Jewish services while their respective places of worship were being erected or repaired. Similar permission had been given from time to time to various local organizations, some with religious backgrounds and some without. The court considered this a mere accommodation and held that there was no constitutional violation.
Privileges and benefits should not be denied to individuals or organizations merely because of their religious affiliations or because they may be engaged in some activity of a religious nature. (Cochran v. Board of Educ., 281 U. S. 370; Everson v. Board of Educ., 330 U. S. 1; Bradfield v. Roberts, 175 U. S. 291; Sargent v. Board of Educ., 177 N. Y. 317.) The test is the First Amendment. It has not been violated here.
This opinion shall constitute the decision of the court.
Complaint dismissed, with costs. Settle judgment on notice