Hugh S. Coyle, J.
This is an action by a number of parents whose children attend public schools maintained by the Board of Education of Union Free School District No. 7, at Hartsdale, New York, for a declaration that said board has no legal or constitutional authority to permit the erection or display on school premises or property of any and all symbols of any deity or semideity belonging to any and all religions. The action was prompted by the Board of Education’s authorization to a group of Hartsdale School District taxpayers, permitting them to erect a creche or nativity scene on the Central Avenue School grounds during a portion of the 1962 Christmas recess, when school would not be in session and at no expense to the school district. The matter is now before the court on plaintiffs ’ motion for summary judgment.
To grant the broad relief requested by the plaintiffs as above indicated would, in the opinion of the court, be tantamount to sanctioning judicially a policy of nonrecognition of Grod in the public schools resulting in a denial that religion has played any part in the formulation of the moral standards of the community. In such circumstances the State’s declared purpose of fostering in the children of the State “moral and intellectual qualities ”, would be thwarted. The Legislature of the State of *301 New York has mandated the Board of Regents to prescribe courses of instruction in patriotism and citizenship in all of the schools of the State “ [i]n order to promote a spirit of patriotic and civic service and obligation and to foster in the children of the state moral and intellectual qualities which are essential in preparing to meet the obligations of citizenship in peace or in war ”. (Education Law, § 801; emphasis supplied.) To possess moral qualities one must be conformable to a standard of morality. “According to common understanding, the terms ‘ immoral ’ and ‘ morals ’ must be taken to refer to the moral standards of the community, the ‘ norm or standard of behavior which struggles to make itself articulate in law ’ ”. (Matter of Commercial Pictures Corp. v. Board of Regents, 305 N. Y. 336, 344 quoting from Cardozo, Paradoxes of Legal Science.) The qualities of fortitude and loyalty not compelled by positive law insure patriotic citizens in time of war as the qualities of honesty fair dealing and decency achieve a harmonious citizenry in times of peace. Other moral qualities such as compassion and love for one’s fellow men render more efficacious obedience to and fulfillment of the positive laws of the State.
There may be a difference of opinion with respect to the origin of the moral law, or the standards of morality which prevail in our modern society. The vast majority of men in the eras of recorded history have conceived the moral law as resting on a theistic foundation whether ascertained by the light of reason and thus rightly called natural law or promulgated by revelation and called divine law. The natural law is mentioned in the Declaration of Independence as ‘1 the laws of nature and of Nature’s God ”, and has been defined by sages. Cicero, before the advent of Christianity, recognized its divine inspiration in mankind as follows: “ Right reason is indeed a true law, in accord with nature, diffused among all men, unchangeable, eternal. By its commands it calls men to their duty, by its prohibitions it deters them from vice. * * * There shall no longer be one law at Rome and another at Athens, nor shall it prescribe one thing to-day and another one tomorrow, but one and the same law, eternal and immutable, shall be prescribed for all nations and all times, and the God who shall prescribe, introduce and promulgate this law shall be the one common Lord and Supreme ruler of all, and whosoever will refuse obedience to Him shall be filled with confusion, as this very act will be a virtual denial of his human nature; and should he escape a present punishment, he shall endure heavy chastisement hereafter.” (De República, Book 111, ch. 23, as quoted in Sodero v. Sodero, 56 N. Y. S. 2d 823, 827.)
*302 The basic foundation of such a philosophy of natural law is denied by some who advocate an adherence to moral principles because the experience of mankind has demonstrated that such conformity works, and has proved conducive, to a well-ordered and peaceful society. Theirs is a pragmatic morality.
For school boards and schoolteachers to attempt a fostering of moral qualities in the children of the -State without a recognition of the possibility, at least, that God is the fountainhead from which moral principles spring would have one of two consequences, either a stultification of their attempt to foster intellectual qualities in the children of the -State or advocacy of a pragmatic morality in their attempt to foster moral qualities in the children of the State. This court will not place school boards and schoolteachers upon the horns of such a dilemma, for as Mr. Justice Goldbekg said in his concurring opinion in Abington School Dist. v. Schempp and Murray v. Curlett (374 U. S. 203, 306): “ Neither government nor this Court can or should ignore the significance of the fact that a vast portion of our people believe in and worship God and that many of our legal, political and personal values derive historically from religious teachings. Government must inevitably take cognizance of the existence of religion and, indeed, under certain circumstances the First Amendment may require that it do so.” (Emphasis supplied.)
While the plaintiffs’ ultimate objective may be to remove from the public schools anything symbolic of God and religion, the court must confine its decision to the matter at issue, namely, whether the Hartsdale School Board’s resolution permitting a group of citizens to erect upon a small portion of spacious school grounds a creche or nativity scene during a period of the Christmas holidays, when school was not in session and without any involvement of the school personnel or school district’s expense, constitutes a violation of the First Amendment. The First Amendment provides that Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. Although the plaintiffs’ complaint alleges that the action of the school board interferes with the free enjoyment of their religious beliefs and constitutes an establishment of religion, for the purposes of this motion seeking summary judgment they have abandoned all claim that the free exercise of their religious beliefs'has been interfered with. And indeed, they must take such position for the papers in support of their motion fail to disclose any such interference. Since school was in recess the compulsory attendance provisions of the Education Law pleaded in the complaint become irrelevant. There is no *303 proof that plaintiffs or their children were compelled to look upon the creche and there is no statement or averment that any of the plaintiffs or any of their children, even voluntarily, viewed the same. There is absolutely no indication in the moving papers as to what are the religious or nonreligious beliefs of the plaintiffs and their children. The only issue of law or fact then is whether the establishment clause of the First Amendment has been violated. This is made eminently clear by the statement in plaintiff’s brief: “ Let there be no mistake, either, about the position of those plaintiffs who follow the Christian theology; objection is made therein, not on the basis of any religious antagonism with the creche as a symbol — but, rather, precisely because it is symbolic of a basic tenet of the Church and, as such, has no place in a secular atmosphere. * * * We contend most vigorously that one may follow the Christian religion and object most emphatically that his own constitutional rights and liberties are infringed by the display of a religious symbol upon public property.”
It is the judgment of this court that the resolution of the Hartsdale School Board permitting the erection of a creche under the circumstances here present does not constitute the establishment of religion. The plaintiffs’ motion is therefore, denied and pursuant to the provisions of subdivision (b) of rule 3212 of the Civil Practice Law and Buies (former subd. 2 of rule 113 of Bules Civ. Prae.) judgment is granted in favor of defendants, dismissing the plaintiffs’ complaint. Unlike Engel v. Vitale (370 U. S. 421) (classroom recitation of so-called Begents’ Prayer) or Abington School Dist. v. Schempp and Murray v. Curlett (374 U. S. 203) (classroom Bible reading and recitation of Lord’s Prayer) which concerned active involvement by government in religious exercises, the present case constitutes, at most, merely a passive accommodation of religion and is governed by this court’s decision, per Gallaghee, J., in Baer v. Kolmorgen (14 Misc 2d 1015). (Cf., also, Matter of Lewis v. Mandeville, 201 Misc. 120.)