
Kimberly STEIN, a minor, by Audrey H. Stein, his parent and next friend, et al., Plaintiffs,

v.

Elihu OSHINSKY, Principal, Public School 184, Whitestone, New York,

and

Max J. Rubin et al., constituting the Board of Education of the City of New York,

and

Board of Regents of the University of the State of New York, Defendants.

No. 63–C–260.

United States District Court
E. D. New York.

Dec. 20, 1963.

Edward J. Bazarian, New York City, for plaintiffs.

Leo A. Larkin, Corp. Counsel, for defendants Elihu Oshinsky, Max J. Rubin and others, constituting Bd. of Education of City of New York, Joseph M. Callahan, Jr., Sidney P. Nadel, New York City, of counsel.

John P. Jehu, Charles A. Brind, Jr., Counsel, State Education Dept., Albany, N. Y., for defendant, Bd. of Regents of University of New York.

BRUCHHAUSEN, District Judge.

The infant plaintiffs seek a mandatory injunction, requiring the defendants to afford the plaintiffs an opportunity to express their love and affection to Almighty God each day through a prayer, voluntarily offered in their respective classrooms; an injunction, enjoining the defendants from interfering with the recitation of this prayer, and to declare such prayers constitutional. The defendants move to dismiss the complaint.

The facts indicate that the infant plaintiffs, students in P. S. 184, Whitestone, New York, were precluded from reciting a prayer pursuant to an order of the school principal. The prayers were as follows:

"God is Great, God is Good
And we thank Him for our Food,
Amen."

The above prayer was recited by the kindergarten children in the morning classes prior to their partaking of milk and cookies.

The afternoon classes recited the following prayer:

"Thank You for the World So Sweet
Thank You for the food we eat
Thank You for the birds that sing
Thank You God for everything."

The New York City Board of Education and the Board of Regents of The

University of the State of New York upheld the principal's ruling.

The infant plaintiffs by their parents demand an opportunity to express their love to God. These plaintiffs are members of Protestant, Roman Catholic, Jewish, Armenian Apostolic and Episcopalian faiths.

The issue is whether the State may deny children attending public schools the opportunity to recite a daily prayer in classrooms, and does such denial constitute a prohibition against the free exercise of religion or a denial of free speech and finally does such ban conflict with the doctrine of neutrality required of a State in its relationship with its citizens.

It is alleged that this prohibition violates the free exercise clause and the free speech clause of the First Amendment of the Constitution of the United States as made applicable to the States by the Fourteenth Amendment of this document.

■ The defendants urge that this court is without jurisdiction because the complaint fails to allege the required monetary damage. It is well settled that an action brought pursuant to the Civil Rights statutes, 42 U.S.C.A. § 1983 and 28 U.S.C.A. § 1343(3), confers jurisdiction without the allegation or proof of any jurisdictional amount. Douglas v. City of Jeanette, Pennsylvania, Pa.1943, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324; Adams v. City of Park Ridge, 7 Cir., 1961, 293 F.2d 585, 588; American Federation of Labor, et al. v. Watson, 327 U.S. 582, 590, 66 S.Ct. 761, 90 L.Ed. 873.

The defendants rely primarily upon the cases of Engel v. Vitale, 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601; School District of Abington Township, Pennsylvania v. Schempp together with Murray v. Curlett, both decided in 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844.

The facts in the Engel case, supra, established that the Board of Education of Union Free School District No. 9, New Hyde Park, New York, acting in its official capacity under State law, directed the School District's principal to cause a prayer to be said aloud by each class in the presence of a teacher at the beginning of each school day. This daily procedure was adopted on the recommendation of the State Board of Regents, a governmental agency, created pursuant to the State Constitution of the State of New York. These state officials composed the prayer which they recommended and published as a part of their "Statement on Moral and Spiritual Training in the Schools," saying:

"We believe that this Statement will be subscribed to by all men and women of good will, and we call upon all of them to aid in giving life to our program."

Mr. Justice Black, writing for the Court in Engel v. Vitale, 370 U.S. 421, at pages 430–431, 82 S.Ct. 1261, at pages 1266–1267, 8 L.Ed.2d 601, held in part:

"There can be no doubt that New York's state prayer program officially establishes the religious beliefs embodied in the Regents' prayer. The respondents' argument to the contrary, which is largely based upon the contention that the Regents' prayer is 'non-denominational' and the fact that the program, as modified and approved by state courts, does not require all pupils to recite the prayer but permits those who wish to do so to remain silent or be excused from the room, ignores the essential nature of the program's constitutional defects. Neither the fact that the prayer may be denominationally neutral nor the fact that its observance on the part of the students is voluntary can serve to free it from the limitations of the Establishment Clause, as it might from the Free Exercise Clause, of the First Amendment, both of which are operative against the States by virtue of the Fourteenth Amendment. Although these two clauses may in certain instances overlap, they forbid two quite different kinds of governmental encroachment upon religious freedom. The Establishment Clause, unlike the Free Exer-

cise Clause, does not depend upon any showing of direct governmental compulsion and is violated by the enactment of laws which establish an official religion whether those laws operate directly to coerce nonobserving individuals or not. This is not to say, of course, that laws officially prescribing a particular form of religious worship do not involve coercion of such individuals. When the power, prestige and financial support of government is placed behind a particular religious belief, the indirect coercive pressure upon religious minorities to conform to the prevailing officially approved religion is plain."

Subsequently in Abington School District v. Schempp; Murray v. Curlett, Board of School Commissioners of Baltimore City, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844, the Court was again called upon to pass on the constitutionality of State statutes. The Abington case required a daily reading of at least ten verses from the Bible without comment, at the opening of each public school on each school day pursuant to Pennsylvania statute.

The Murray case required opening exercises in the schools of the city, consisting primarily of the reading, without comment, of a chapter in the Holy Bible and/or the use of the Lord's Prayer.

In both cases students were permitted to absent themselves or not take part in these exercises. The Supreme Court concluded both these cases violated the Establishment Clause by requiring the selection and reading at the opening of the school day of verses from the Holy Bible and the recitation of the Lord's Prayer in unison. These exercises were prescribed as part of the curricular activities of students, required by law to attend school. They were held in the school buildings under the supervision and with the participation of teachers employed in those schools. The State intended to institute a religious program and thus violated the Establishment Clause.

The case at bar does not involve a State statute requiring the children or personnel to actively engage in or refrain from acknowledging their complete dependence upon God. It is merely a voluntary desire of the children without any coercion or pressure being brought to offer a prayer to the Almighty. It is in this light, the Court must decide whether the facts in this case constitute the establishment of religion prohibited by the First Amendment. The First Amendment provides that Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof.

In Zorach v. Clauson, 343 U.S. 306, at page 312, 72 S.Ct. 679, at page 683, 96 L.Ed. 954, the Court held in part:

"There cannot be the slightest doubt that the First Amendment reflects the philosophy that Church and State should be separated. And so far as interference with the 'free exercise' of religion and an 'establishment' of religion are concerned, the separation must be complete and unequivocal. The First Amendment within the scope of its coverage permits no exception; the prohibition is absolute. The First Amendment, however, does not say that in every and all respects there shall be a separation of Church and State. Rather, it studiously defines the manner, the specific ways, in which there shall be no concert or union or dependency one on the other. That is the common sense of the matter. Otherwise the state and religion would be aliens to each other—hostile, suspicious, and even unfriendly. Churches could not be required to pay even property taxes. Municipalities would not be permitted to render police or fire protection to religious groups. Policeman who helped parishioners into their places of worship would violate the Constitution. Prayers in our legislative halls; the appeals to the Almighty in the messages of the Chief Executive; the proclamations mak-

ing Thanksgiving Day a holiday; 'so help me God' in our courtroom oaths—these and all other references to the Almighty that run through our laws, our public rituals, our ceremonies would be flouting the First Amendment. A fastidious atheist or agnostic could even object to the supplication with which the Court opens each session: 'God save the United States and this Honorable Court.' "

The Court further states at page 313 of 343 U.S., page 683 of 72 S.Ct., 96 L.Ed. 954:

"We are a religious people whose institutions presuppose a Supreme Being."

The Court also, 343 U.S. at page 314, 72 S.Ct. at page 684, 96 L.Ed. 954, held in part:

"Government may not finance religious groups nor undertake religious instruction nor blend secular and sectarian education nor use secular institutions to force one or some religion on any person. But we find no constitutional requirement which makes it necessary for government to be hostile to religion and to throw its weight against efforts to widen the effective scope of religious influence. The government must be neutral when it comes to competition between sects. It may not thrust any sect on any person. It may not make a religious observance compulsory. It may not coerce anyone to attend church, to observe a religious holiday, or to take religious instruction."

See also West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628; Holy Trinity Church v. United States, 143 U.S. 457, 470, 12 S.Ct. 511, 36 L.Ed. 226; Lawrence v. Buchmueller, 40 Misc.2d 300, 243 N.Y.S.2d 87; Lewis v. Allen, 5 Misc.2d 68, 159 N.Y.S.2d 807.

■ The facts in this case together with the applicable law clearly indicate that the voluntary prayer offered by these children is made without any compulsion and it is not prescribed by law, and does not tend to establish a religion in violation of the First Amendment.

Inasmuch as the School Board is invested with the power and obligation to conduct its affairs, including programming of classes and maintenance of discipline, the rights of the plaintiffs to say voluntary prayer must be subject to such reasonable rules and regulations as may be prescribed by the school authorities.

This opinion constitutes the findings of fact and conclusions of law.

The plaintiffs' motion for summary judgment is granted and defendants' motions are denied.

Settle order and decree on ten (10) days' notice.