Kimberly STEIN, a minor, by Audrey H. Stein, his parent and next friend, et al., Plaintiffs-Appellees,

v.

Elihu OSHINSKY, Principal, Public School 184, Whitestone, New York,

and

Max J. Rubin et al., constituting the Board of Education of the City of New York,

and

Board of Regents of the University of the State of New York, Defendants-Appellants.

No. 457, Docket 28812.

United States Court of Appeals Second Circuit.

Argued April 29, 1965.

Decided July 7, 1965.

Sidney P. Nadel, New York City (Leo A. Larkin, Corp. Counsel of City of New York, Seymour B. Quel, Joseph M. Callahan, Jr., Benjamin Offner, New York City, of counsel), for defendants-appellants Oshinsky and Board of Education of City of New York.

John P. Jehu, Albany, N. Y. (Charles A. Brind, Albany, N. Y., Counsel, State

Board of Education), for defendant Board of Regents of University of State of New York.

Edward J. Bazarian, Flushing, N. Y., for plaintiffs-appellees.

Hahn, Hahn & Ford, Brooklyn, N. Y., filed brief for The Particular Synod of New York, Reformed Church in America as amicus curiæ.

Stephen A. Hochman, New York City, filed brief for New York Civil Liberties Union as amicus curiæ.

Before LUMBARD, Chief Judge, and FRIENDLY and ANDERSON, Circuit Judges.

FRIENDLY, Circuit Judge.

The decision in Engel v. Vitale, 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601, condemning the "Regents' prayer" as violating the Establishment Clause of the First Amendment, held to be applicable to the states by the Fourteenth, was rendered on June 25, 1962, too late to affect the 1961–62 school year. The case now before us reflects a response to that decision by parents who think their children ought have some form of religious observance while in public school.

The amended complaint, filed in March, 1963, in the District Court for the Eastern District of New York, made the following allegations: The fifteen plaintiffs, of varying religious faiths, are parents of twenty-one children, ranging from five to eleven years in age. The children attend Public School 184, at Whitestone, N. Y., in grades ranging from kindergarten to the sixth. The defendants are Elihu Oshinsky, principal of the school; the members of the Board of Education of New York City; and the Board of Regents of the University of the State of New York. On October 5, 1962, Mr. Oshinsky "ordered his teachers who were instructing the kindergarten classes to stop the infant children from reciting the simple and ancient prayer:

'God is Great, God is Good and We Thank Him for our Food, Amen!'

before they ate their cookies and milk in the morning session," and "ordered his teachers who were instructing the kindergarten classes for the afternoon session to stop the infant children from reciting the simple and ancient prayer:

'Thank You for the World so Sweet,
Thank You for the Food We Eat,
Thank You for the Birds that Sing—
Thank You, God, for Everything.' "

He also "ordered his teachers to stop the saying of any prayer in any classroom in P. S. 184, Whitestone, New York." The Board of Education and the Board of Regents have instituted a policy banning prayers in the public schools even when the opportunity to pray is sought by the students themselves, and by so doing have "condoned and/or directed" Mr. Oshinsky's actions. The plaintiffs had joined in a written demand to the defendants "that our children be given an opportunity to acknowledge their dependence and love to Almighty God through a prayer each day in their respective classrooms"; defendants had ignored this.

■■ The defendants moved, under F.R.Civ.P. 12(b), to dismiss the complaint for lack of subject-matter jurisdiction and for failure to state a claim on which relief could be granted. Plaintiffs countered with a motion for summary judgment under F.R.Civ.P. 56, supported by an affidavit which added no allegations to those in the complaint and asserted that "the issues presented are purely Constitutional in nature and questions of law. No issues of fact are presented." Defendants filed no affidavits contradicting anything said in the complaint; they urged rather that the motion for summary judgment was premature and that their own motion did not admit the allegations of the complaint save for the purpose of raising the objections there stated. The court denied defendants' motion and granted plaintiffs', 224 F.Supp. 757 (1963). It signed an order prohibiting interference with prayer and requiring that a reasonable opportunity for it be provided each day, but stayed the order pending this appeal.

We see no force in defendants' argument that the posture of the case did not permit the grant of summary judgment to plaintiffs, whatever the merits of their claim and the adequacy of the showing in its support. Although F.R. Civ.P. 56(a) in its initial form would have postponed such a motion until answer had been filed, one of the purposes of the 1946 amendment was to permit a plaintiff to move for summary judgment while a pre-answer rule 12(b) motion was pending. 6 Moore, Federal Practice ¶ 56.07 (2d ed. 1953). We likewise cannot sustain defendants' contention that the complaint did not sufficiently raise a claim of denial of constitutional rights to the free exercise of religion and to freedom of speech "to warrant exercise of federal jurisdiction for purposes of adjudicating it" under 28 U.S.C. § 1343 (3). Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946). But we think the court erred in its ruling on the merits.

■ Plaintiffs say that Engel v. Vitale, supra, and the later decisions in Abington Tp. School District v. Schempp and Murray v. Curlett, both at 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963), held only that under the Establishment Clause of the First Amendment a state may not *direct* the use of public school teachers and facilities for the recitation of a prayer, whether composed by a state official as in Engel or not so composed but having a religious content as in Abington and Curlett; they argue that these decisions did not hold that a state could not *permit* students in public schools to engage in oral prayer on their own initiative. This may be true enough; if the defendants could prevail only by showing that permitting the prayers was prohibited by the Establishment Clause, the question would be whether the use of public property as a situs for the prayers, the consumption of some teacher time in preserving order for their duration, and the possible implication of state approval therefrom would attract the condemnation of People of State of Illinois ex rel. McCollum v. Board of Education, 333 U.S. 203, 68 S.Ct. 461, 92 L.Ed. 649 (1948), or the benediction of Zorach v. Clauson, 343 U.S. 306, 72 S.Ct. 679, 96 L.Ed. 954 (1952), and Sherbert v. Verner, 374 U.S. 398, 409, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). Although we note in this connection defendants' serious contention that in the context of closely organized schooling of young children, "student-initiated" prayers are an illusion and any effective routine requires the active participation of the teachers, we shall assume, *arguendo*, in plaintiffs' favor that the Establishment Clause would not prohibit New York from permitting in its public schools prayers such as those here at issue. Nevertheless New York is not bound to allow them unless the Free Exercise Clause or the guarantee of freedom of speech of the First Amendment compels.

■ Neither provision requires a state to permit persons to engage in public prayer in state-owned facilities wherever and whenever they desire. Poulos v. State of New Hampshire, 345 U.S. 395, 405, 73 S.Ct. 760, 97 L.Ed. 1105 (1953). It would scarcely be argued that a court had to suffer a trial or an argument to be interrupted any time that spectators—or even witnesses or jurymen—desired to indulge in collective oral prayer. The case of the school children differs from that of spectators—although not from that of witnesses or jurymen— in that, so long as they choose to attend a public school, attendance on their part is compulsory. N.Y. Education Law, Consol.Laws, c. 16, §§ 3201–3229. But "[t]he student's compelled presence in school for five days a week in no way renders the regular religious facilities of the community less accessible to him than they are to others." Abington Tp. School District v. Schempp, supra, 374 U.S. at 299, 83 S.Ct. at 1612 (concurring opinion of Mr. Justice Brennan). We are not here required to consider such cases as that of a Moslem, obliged to prostrate himself five times daily in the direction of Mecca, or of a child whose beliefs forbade his partaking of milk and cookies

without saying the blessings of his faith. Cf. Sherbert v. Verner, supra, 374 U.S. at 399 n. 1, 83 S.Ct. 1790. So far as appears, the school authorities might well permit students to withdraw momentarily for such necessary observances —or to forego the milk and cookies, just as they excuse children on holidays important to their religions.

Determination of what is to go on in public schools is primarily for the school authorities. Against the desire of these parents that their children "be given an opportunity to acknowledge their dependence and love to Almighty God through a prayer each day in their respective classrooms," the authorities were entitled to weigh the likely desire of other parents not to have their children present at such prayers, either because the prayers were too religious or not religious enough; and the wisdom of having public educational institutions stick to education and keep out of religion, with all the bickering that intrusion into the latter is likely to produce. The authorities acted well within their powers in concluding that plaintiffs must content themselves with having their children say these prayers before nine or after three; their action presented no such inexorable conflict with deeply held religious belief as in Sherbert v. Verner, supra. After all that the states have been told about keeping the "wall between church and state * * * high and impregnable," Everson v. Board of Education, 330 U.S. 1, 18, 67 S.Ct. 504, 513, 91 L.Ed. 711 (1947), it would be rather bitter irony to chastise New York for having built the wall too tall and too strong.

■ It was thus error to grant summary judgment to the plaintiffs. We think also that the case calls on us to direct judgment dismissing the complaint. Although denial of the defendants' motions to dismiss would not itself have been appealable, it goes without saying that the grant of summary judgment to the plaintiffs was a proper subject for appeal, 28 U.S.C. § 1291, and 28 U.S.C. § 2106 empowers us to "direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances." Although we have found no authority directly on point, First Nat'l Bank in Yonkers v. Maryland Cas. Co., 290 F.2d 246, 251–252 (2 Cir.), cert. denied, 368 U.S. 939, 82 S.Ct. 381, 7 L.Ed.2d 338 (1961), is very close to being one. A further analogy is furnished by the settled rule, "Where, on an appeal from an order granting or continuing a temporary injunction, or from an order appointing a receiver, the equity of the bill is challenged and the attack upon it appears to be well founded, the power is conferred, and the duty is imposed, upon the appellate court to consider it, and, if it is of the opinion that the relief sought by the bill cannot be granted, to so decide, and thus to save the parties to the suit further expense resulting from the endeavor to secure impossible relief." Guardian Trust Co. v. Kansas City So. Ry. Co., 171 F. 43, 51, 28 L.R.A.,N.S., 620 (8 Cir. 1909) (Sanborn, J.), and cases cited; Metropolitan Water Co. v. Kaw Valley Drainage District, 223 U.S. 519, 523, 32 S.Ct. 246, 56 L.Ed. 533 (1912); Triumph Hosiery Mills, Inc. v. Triumph Int'l Corp., 308 F.2d 196, 200 (2 Cir. 1962); Zentner v. American Fed'n of Musicians, 343 F.2d 758 (2 Cir. 1965). Plaintiffs' attorney has consistently maintained that all the facts are contained in the complaint and are before the court; he did not indicate in argument that any facts warranting a different decision could be alleged or proved. Under these circumstances, we perceive no reason for not bringing this litigation to an end. See 6 Moore, supra, ¶¶ 56.12, 56.13, 56.27[2].

The judgment is reversed, with directions to dismiss the complaint.