COMMISSIONER OF EDUCATION *vs.* SCHOOL COMMITTEE
OF LEYDEN.

Suffolk.    February 4, 1971. — March 2, 1971.

Present: TAURO, C.J., SPALDING, CUTTER, SPIEGEL, & BRAUCHER, JJ.

*Constitutional Law,* Establishment of religion.  *School and School Com-
mittee.  Religion.  Education.*

Under the applicable decisions of the Supreme Court of the United States
    pertaining to the prohibition of the First Amendment to the United
    States Constitution against the enactment of any law respecting an
    establishment of religion, neither students nor teachers of a town
    could be allowed to participate in the observances on school property
    authorized by a resolution of the school committee that "On each
    school day, before class instruction begins, a period of not more than
    five minutes shall be available to those teachers and students who may
    wish to participate voluntarily in the free exercise of religion."

BILL IN EQUITY filed in the Superior Court on January 27, 1970.

The suit was heard by ·*Rutledge,* J.

*William E. Searson, III,* Assistant Attorney General (*Walter H. Mayo, III,* Assistant Attorney General, with him), for the plaintiff.

*Ralph Warren Sullivan* (*James M. Malloy* with him) for the defendant.

*Henry P. Monaghan,* for Civil Liberties Union of Massachusetts, amicus curiae, submitted a brief.

CUTTER, J.    The commissioner's bill seeks to enjoin the school committee from putting into effect a resolution

adopted on August 21, 1969,[1] and "from permitting . . . Bible reading or prayer in the . . . [Leyden] public schools." The matter is before us on a case stated, summarized below, upon which it is our duty [2] to order the correct decree. See *Saphier* v. *Devonshire St. Fund, Inc.* 352 Mass. 683, 684; *Nasis* v. *American Motorists Ins. Co.* 353 Mass. 219, 221.

After reciting the resolution (fn. 1) the case stated sets forth that, prior to the opening of school for the academic year 1969–1970, the school committee met with several teachers of the Leyden Elementary School and gave them copies of the resolution. They were told that "they could participate or not as they desired; that participation or non-participation was a matter of indifference to the school committee, and that if they participated they would do so in their capacity as private citizens and not in their capacity as teachers." The teachers were instructed to "give similar information to all children." School was to commence at 8:45 A.M. and "whatever activity, if any, that occurred under" the resolution was to end before 8:45 A.M. There has been no modification of the resolution nor has the school committee ".communicated further with the teachers concerning this matter."

Each day one school bus arrives about 8:10 A.M. The other two buses arrive between 8:30 and 8:45.[3] At 8:40 a

---

[1] The resolution, referred to in the record as a "motion," reads, "On each school day, before class instruction begins, a period of not more than five minutes shall be available to those teachers and students who may wish to participate voluntarily in the free exercise of religion as guaranteed by our United States Constitution. This freedom of religion shall not be expressed in any way which will interfere with another's rights. Participation may be total or partial, regular or occasional, or not at all. Non-participation shall not be considered evidence of non-religion nor shall participation be considered evidence of recognizing an establishment of religion. The purpose of this . . . [resolution] is not to favor one religion over another nor to favor religion over non-religion, but rather to promote love of neighbor, brotherhood, respect for the dignity of the individual, moral consciousness, and civic responsibility; to contribute to the general welfare of the community and to preserve the values that constitute our American heritage."

[2] The trial judge ruled that (in the circumstances described in the case stated) reading by students of the Bible, religious texts, or prayer did not offend against certain recent constitutional decisions of the Supreme Court but that participation by teachers did do so.

[3] When the approximately eighty children arrive each morning, some play outdoors and some go inside, talk, "read, or otherwise occupy their time." By the 1965 State Census, the town had a total population of 343.

bell indicates that school will start in five minutes. "During the five minutes immediately prior to the 8:45 A.M. bell, some form of prayer or spiritual expression takes place in each of the classrooms. . . . [T]he average duration *is two* to three minutes. Generally one of the children or one of the teachers . . . read[s] from one of the Bibles, anthologies or other inspirational texts (some are owned by the [t]own, some by the teachers and some by the children). On some occasions prayers, traditional (such as the Lord's Prayer) or innovative, are said. . . . [On some occasions] all . . . who have gathered early join in and at other times others just listen. At one time or another all of the children have participated to some extent, and those who do not, on the occasions that they do not, either play outside or remain in the lobby or library areas of the school. The teachers . . . [need not be, but usually] are in their own rooms during the entire five minutes before 8:45 . . . and generally they do participate to a varying extent. . . . The . . . [resolution] has not caused any change in the schedule of the school buses, the time of the opening of and free access to the school building, or the practice of sounding school bells."

1. The commissioner, despite the provisions of G. L. c. 71, § 1B, inserted by St. 1970, c. 264,[4] argues that the Leyden resolution, the activities permitted by it, and § 1B are in violation of the Massachusetts Constitution, particularly art. 46, § 2, of the Amendments. There is no occasion to pass upon these contentions. We deal with the matter solely on the basis of decisions of the Supreme Court of the United States considering the application of the Constitution of the United States to generally similar situations. Cf. *Commonwealth* v. *Renfrew*, 332 Mass. 492.

2. Several recent decisions of the Supreme Court of the United States discuss religious exercises and instruction in,

---

[4] "The school committee of any city or town may permit any child attending its public schools to participate in voluntary prayer with the approval of such child's parents before the commencement of each daily school session. Notwithstanding any provision of law to the contrary, no city or town which permits such prayer shall be denied any funds for school purposes to which it may be entitled from the commonwealth."

or closely related to, the public schools.[5] The most pertinent of these are *Engel* v. *Vitale,* 370 U. S. 421, 422–424, 430 (short nondenominational prayer prescribed by the State Board of Regents violates the Establishment Clause of the First Amendment); *Abington Sch. Dist.* v. *Schempp,* 374 U. S. 203, 222–226 (prescribed reading of Bible and prayer invalid under First Amendment, even if student participation may be excused); *Chamberlin* v. *Dade County Bd. of Pub. Instruction,* 377 U. S. 402 (revg. 160 So. 2d [Fla.] 97); *Stein* v. *Oshinsky,* 348 F. 2d 999, 1001–1002 (2d Cir. — School officials not required to permit voluntary devotional exercises on State-owned property), cert. den. 382 U. S. 957; *DeSpain* v. *DeKalb County Community Sch. Dist.* 384 F. 2d 836, 838–840 (7th Cir.), cert. den. 390 U. S. 906. See *State Bd. of Educ.* v. *Board of Educ. of Netcong,* 57 N. J. 172, affg. 108 N. J. Super. 564, 575–585, cert. den. 401 U. S. 1013, in which the court reached a conclusion substantially like the result which we reach.

The school committee's position, in effect, is that the Leyden practices, conducted in a manner consistent with the resolution (fn. 1), are not within the prohibition of the *Schempp* case (374 U. S. 203) because there is no requirement of student or teacher participation, the voluntary exercises are wholly under student control, and there is no prescribed form for the exercises. The exercises, however, are held on school property with school committee permission granted by a resolution. Teacher participation (at least without teacher leadership or control) is allowed. It reasonably may be inferred that the resolution was a

---

[5] See e.g. *Everson* v. *Board of Educ.* 330 U. S. 1, 14–15 (reimbursement of bus transportation for children attending parochial schools); *McCollum* v. *Board of Educ.* 333 U. S. 203, 206, 209 (released time for religious instruction on school property); *Zorach* v. *Clauson,* 343 U. S. 306, 308–309, 312–315 (released time for religious instruction off school premises); *Board of Educ.* v. *Allen,* 392 U. S. 236, 242–249 (State furnishing of free secular textbooks to parochial school children not shown to be otherwise than completely neutral with respect to religion); *Epperson* v. *Arkansas,* 393 U. S. 97, 98–99, 107 (proscription of teaching certain evolution doctrine held invalid); *Walz* v. *Tax Commn.* 397 U. S. 664, 672–680 (local tax exemption of land used for religious purposes valid). See also *Sherbert* v. *Verner,* 374 U. S. 398, 403–410; *Reed* v. *Van Hoven,* 237 F. Supp. 48, 54–57 (W. D. Mich.); Annotation, 45 A. L. R. 2d 742.

sincere effort to permit continuance, on a wholly voluntary basis, of what had formerly been required by G. L. c. 71, § 31. That statute was held unconstitutional in *Attorney Gen.* v. *School Comm. of No. Brookfield,* 347 Mass. 775, a result inevitable under the decisions of the Supreme Court of the United States just cited. See *Waite* v. *School Comm. of Newton,* 348 Mass. 767.

The Supreme Court thus far has not limited the broad language with which (as in the *Schempp* case) it has held invalid substantially nondenominational and neutral religious observances on public school property. Until and unless such a limitation takes place (even if there is minimal State encouragement of only insubstantial school religious exercises), it would serve no useful purpose to attempt to draw any fine distinction between those observances which have hitherto been proscribed by the Supreme Court and the Leyden practices now presented for our scrutiny. We think that, under the applicable First Amendment decisions, neither students nor teachers may be allowed to participate in the well-intended observances on school property authorized by the Leyden resolution.

The final decree is reversed. A new decree is to be entered consistent with this opinion.

*So ordered.*