**Mary G. P. HALL and Lawrence C. Roush, Appellants,**

v.

**Thomas W. BRADSHAW, Jr., Secretary of the North Carolina Department of Transportation, Appellee.**

No. 79–1274.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 8, 1980.

Decided Sept. 10, 1980.

Michael K. Curtis, Greensboro, N.C. (Jonathan R. Harkavy, Smith, Patterson, Follin, Curtis, James & Harkavy, Greensboro, N.C., on brief), for appellants.

Jane J. Rankin Thompson, Asst. Atty. Gen., Raleigh, N.C. (Rufus L. Edmisten, Atty. Gen. of North Carolina, Raleigh, N.C., on brief), for appellee.

Before PHILLIPS and MURNAGHAN, Circuit Judges, and FALCON B. HAW-

KINS, United States District Judge, sitting by designation.

JAMES DICKSON PHILLIPS, Circuit Judge:

Plaintiffs, residents and taxpayers of North Carolina, brought suit in the district court seeking to permanently enjoin the Secretary of the North Carolina Department of Transportation from including a "Motorist's Prayer" on the state map published and distributed free of charge by the Department. The district court granted defendant's motion for summary judgment and dismissed the action. We conclude that the inclusion of the prayer on the official map contravenes the Establishment Clause and reverse.

## I

■ The stipulated facts reveal that North Carolina has, since 1964, included a prayer on its official map. One side of the map is simply a road map; the other side includes scenic photographs, a message from the Governor, and the "Motorist's Prayer," which reads:

Our heavenly Father, we ask this day a particular blessing as we take the wheel of our car. Grant us safe passage through all the perils of travel; shelter those who accompany us and protect us from harm by Thy mercy; steady our hands and quicken our eye that we may never take another's life; guide us to our destination safely, confident in the knowledge that Thy blessings go with us through darkness and light . . . sunshine and shower . . . forever and ever. Amen.

From 1964 to 1974, 6,174,800 official maps were published at a cost of $448,653. Plaintiffs complained by letter to the Secretary of the Department of Transportation that inclusion of the prayer on the state map violated the Establishment Clause and asked that the prayer be removed. The Department rejected this request and continues to print the prayer on the state map. Plaintiffs brought suit, and cross motions for summary judgment were filed. The

district court applied the three part test found in *Committee for Public Education & Religious Liberty v. Nyquist,* 413 U.S. 756, 93 S.Ct. 2955, 37 L.Ed.2d 948 (1973), and held that the map passed constitutional muster "albeit by a slim margin." The test stated in *Nyquist* requires that

to pass muster under the Establishment Clause the law in question, first, must reflect a clearly secular legislative purpose, . . . second, must have a primary effect that neither advances nor inhibits religion, . . . and, third, must avoid excessive government entanglement with religion."

*Id.* at 773, 93 S.Ct. at 2965 (citations omitted).

Applying this test, the district court held that the purpose of the prayer was to promote highway safety, which is secular; that the prayer did not advance or inhibit religion because of "its limited audience"; and that inclusion of the prayer did not excessively entangle the state in religion. Finally the court noted the absence of compelled recitation of the prayer or subjection to ridicule as part of the captive audience. We agree that the *Nyquist* test provides the proper analytical framework for decision, but disagree with its application by the district court.

## II

### A.

■ We look first to the question whether the challenged state action reflects a secular purpose. The Establishment Clause of the first amendment, applicable to the states through the fourteenth amendment, *e. g., Everson v. Board of Education,* 330 U.S. 1, 8, 67 S.Ct. 504, 508, 91 L.Ed. 711 (1947), commands that a state "shall make no law respecting an establishment of religion." The clause is broadly written, prohibiting laws *respecting* establishment of religion rather than simply prohibiting establishment of religion, *Lemon v. Kurtzman,* 403 U.S. 602, 612, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971), and has been broadly interpreted "in light of its history and the

evils it was designed forever to suppress." *McGowan v. Maryland*, 366 U.S. 420, 442, 81 S.Ct. 1101, 1113, 6 L.Ed.2d 393 (1961). The history and purpose of the amendment has been discussed in detail, *see e. g., Everson v. Board of Education*, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947); *McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *Engel v. Vitale*, 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962), and need not be repeated here except to note that the clause was intended to protect against "sponsorship, financial support, and active involvement of the sovereign in religious activity." *Walz v. Tax Commission*, 397 U.S. 664, 668, 90 S.Ct. 1409, 1411, 25 L.Ed.2d 697 (1970). We conclude that the state action here does not reflect a clearly secular purpose but instead impermissibly sponsors religious activity.

In *McGowan* the Court upheld a Sunday closing law after finding that the legislative purpose was to set aside a universal day of rest rather than to aid religion, 366 U.S. at 449, 81 S.Ct. at 1117, but noted that Sunday closing legislation could contravene the Establishment Clause if the statute, its legislative history, or its effect revealed the legislative purpose to be the aid of religion, *id.* at 453, 81 S.Ct. at 1119. The Motorist's Prayer is unquestionably a prayer and is, by its very nature, religious. By printing a prayer on the official map, the state is placing its power and support behind a particular form of theological belief, and state sponsorship of religious belief is one of the primary encroachments the clause seeks to inhibit. While the "lines of demarcation in this extraordinarily sensitive area of constitutional law" may be unclear, *Lemon v. Kurtzman*, 403 U.S. at 612, 91 S.Ct. at 2111, the Establishment Clause clearly reaches the state sanctioned prayer in this case for "the constitutional prohibition against laws respecting an establishment of religion must at least mean that in this country it is no part of the business of government to compose official prayers." *Engel v. Vitale*, 370 U.S. at 425, 82 S.Ct. at 1264. In *Engel* a school board required a short prayer to be said aloud in public school classes at the start of each day. *Engel* involved voluntary recitation of a prayer, and the court below distinguished it because no person is compelled to read the Motorist's Prayer. Establishment Clause violations, however, are not predicated on the presence of compulsion, *Abington School District v. Schempp*, 374 U.S. 203, 223, 83 S.Ct. 1560, 1572, 10 L.Ed.2d 844 (1963), and the Court in *Engel* expressly held that neither the nondenominational quality of the prayer nor the voluntariness of the recitation could save the prayer from violating the Establishment Clause, 370 U.S. at 430, 82 S.Ct. at 1266.

The district court accepted defendant's contention that the prayer promoted safety, which is a legitimate secular purpose. A prayer, however, is undeniably religious and has, by its nature, both a religious purpose and effect. While we agree that the prayer may foster the state's legitimate concern for safety of motorists, the state cannot escape the proscriptions of the Establishment Clause merely by identifying a beneficial secular purpose. The inquiry goes beyond this.

In *Abington School District v. Schempp* the Supreme Court held that reading of verses from the Holy Bible and recitation of the Lord's Prayer in public schools contravened the Establishment Clause. The Court rejected the state's argument that the exercises served a secular purpose, that is, "the promotion of moral values, the contradiction to the materialistic trends of our times, the perpetuation of our institutions and the teaching of literature," *id.* at 223, 83 S.Ct. at 1572, because the secular purpose was sought to be achieved by clearly religious means, *id.* at 224, 83 S.Ct. at 1572. In a concurring opinion, Justice Brennan accepted the argument that the devotionals served nonreligious educational purposes, *id.* at 278, 83 S.Ct. at 1601, but believed that "the States may not employ religious means to reach a secular goal unless secular means are wholly unavailing," *id.* at 294, 83 S.Ct. at 1609. In this case the state has chosen a clearly religious means to promote its secular end. If a state could avoid the application of the first amendment in this manner,

"any religious activity of whatever nature could be justified by public officials on the basis that it has beneficial secular purposes." *DeSpain v. DeKalb County Community School District 428*, 384 F.2d 836 (7th Cir. 1967). In *DeSpain* the court held that a nondenominational "thank you" poem constituted a prayer and that recitation of the prayer in a public kindergarten contravened the Establishment Clause. The state argued that the verse promoted good manners and gratitude, both of which are commendable secular aims, and the court acknowledged that the verse may well have had that effect. Nonetheless, the court noted that the principles of *Engel* and *Schempp* are meaningless if the use of a prayer may be justified on the grounds that it promotes secular virtues. *Id.* at 839. Both *Engel* and *Schempp* involved prayers or Bible readings in the public schools, but a state may no more use its official publications to promote a particular type of religious belief than it may use its public schools to accomplish that result. *See McCollum v. Board of Education*, 333 U.S. 203, 212, 68 S.Ct. 461, 465, 92 L.Ed. 649 (1948).

### B.

The district court relied on the map's limited audience and distribution in holding that the use of the prayer did not advance or inhibit religion. A prayer, because it is religious, does advance religion, and the limited nature of the encroachment does not free the state from the limitations of the Establishment Clause. The court in *DeSpain* frankly noted the temptation to find the thank you prayer a *de minimis* violation, but nonetheless held the use of the "innocuous" verse to be unconstitutional. 384 F.2d at 840. The Supreme Court has rejected the argument that relatively minor encroachments may escape scrutiny under the Establishment Clause, for "[t]he breach of neutrality that is today a trickling stream may all too soon become a raging torrent." *Abington School District v. Schempp*, 374 U.S. at 225, 83 S.Ct. at 1573. *See also Engel v. Vitale*, 370 U.S. at 436, 82 S.Ct. at 1269. The clear effect of any officially composed and published prayer is to advance religion as it is conceived by the official acting for the state.

### C.

We are persuaded on the final element of the *Nyquist* test that the prayer has the potential for entangling the state in a politically divisive conflict. The Religion Clauses of the Constitution require tolerance by government of a diversity of beliefs and sponsorship of none. *Zorach v. Clauson*, 343 U.S. 306, 313, 72 S.Ct. 679, 683, 96 L.Ed. 954 (1952). By placing its imprimatur on the particular kind of belief embodied in any prayer, the state necessarily offends the sensibilities not only of nonbelievers but of devout believers among the citizenry who regard prayer "as a necessarily private experience," *Abington School District v. Schempp*, 374 U.S. at 283–85, 83 S.Ct. at 1603–1604 (Brennan, J., concurring). The Establishment Clause is intended to protect our society from the threat of political division along religious lines. *See, e. g., Lemon v. Kurtzman*, 403 U.S. at 622, 91 S.Ct. at 2115; *Committee for Public Education & Religious Liberty v. Nyquist*, 413 U.S. at 794–98, 93 S.Ct. at 2976–2978.

As a moment's reflection reveals, only a ruthless, absolutist application of the principle as it relates to officially composed prayers can insure the intended protection. No *de minimis* exception is tolerable. If the State Department of Transportation here involved may constitutionally adopt and publish its official prayer, so presumably may any other agency of the state. If in the course of its prayer the Department of Transportation may constitutionally address deity by the appellation "heavenly Father," so might it or any other agency constitutionally address this or a comparable prayer to any number of deities or patron saints by any number of appellations used by any of the many sects, denominations, or major world religions that have adherents in our pluralistic society. That such other prayers are not before the court in this case, or even that under present societal conditions in the affected state they may be thought—taking

judicial notice—not too likely to be, is simply no answer to the observation. For the "excessive entanglement" element of the *Nyquist* test compels consideration of the precedential consequence of any judicial approval of an officially composed prayer. To sanction one official prayer is necessarily to sanction all generally comparable ones, and the entangling effect of any under direct challenge must necessarily be gauged in relation to the potential as well as the actual consequence of the immediate decision. *See Lemon v. Kurtzman*, 403 U.S. at 622–24, 91 S.Ct. at 2115–2116. On this basis, we are persuaded that the threat of political divisiveness inherent in any form of officially composed prayer is so palpable as necessarily to invoke the prohibition of the Establishment Clause.

Our earlier observation that Establishment Clause protection in this realm can admit of no *de minimis* exceptions bears emphasis at this point, for it might be contended that the uncontrollable precedential effect just noted can safely be avoided by sensitive judicial distinctions between the theologically innocuous and the theologically significant in official prayers. Nothing could serve better to demonstrate that no exceptions are allowable than contemplating the judiciary in such a role. Judges can no more be entrusted with the task of assessing theological significance and hence the specific threat of divisiveness by a particular form of prayer than can other officials of the state be entrusted with the task of original composition. Indeed it could be suggested with considerable support from history that there is literally no such thing as an innocuous theological statement, if by that is meant one incapable of exciting any significant religious divisions within the populace.[1] In any event, judicial determinations of innocuousness would themselves necessarily constitute new theological expressions by the state having their own potentialities for creating divisiveness. This is a thicket that we are satisfied the Framers wisely intended judges as well as other officers of the state to leave to the sacred privacy of the individual conscience. *See Engel v. Vitale*, 370 U.S. at 431–32, 82 S.Ct. at 1267.

Our conclusion, in summary, is that though the Establishment Clause's barrier between church and state may never have been the "high and impregnable" one along its entire length envisioned by Mr. Justice Black, *Everson v. Board of Education*, 330 U.S. at 18, 67 S.Ct. at 512, and is more correctly seen in total sweep as "a blurred, indistinct and variable" one, *Lemon v. Kurtzman*, 403 U.S. at 614, 91 S.Ct. at 2112, at the point where it protects against officially sanctioned forms of religious worship, it must be considered plain, distinct and invariable. *See Engel v. Vitale*, 370 U.S. at 430, 82 S.Ct. at 1266.

### D.

■ In a special argument defendant invokes precedent in arguing that the prayer on the map is akin to the imprinting of our national motto, "In God We Trust," on the nation's coins, currency and official documents. In *Aronow v. United States*, 432 F.2d 242 (9th Cir. 1970), the court upheld the use of the motto, which had been challenged as violating the Establishment Clause. The motto is "patriotic and ceremonial" and "has no theological or ritualistic impact." *Id.* at 243. The history of this nation has been identified with religion, *Abington School District v. Schempp*, 374 U.S. at 212–14, 83 S.Ct. at 1565–67, *Engel v. Vitale*, 370 U.S. at 434, 82 S.Ct. at 1268, and our ceremonies and public rituals reflect that "[w]e are a religious people whose institutions presuppose a Supreme Being,"

---

1. While the prayer at issue might at first blush seem utterly innocuous, there are doubtless many even within the main theological stream of the dominant religious culture of the affected populace who are at least made uncomfortable, and perhaps are positively offended, by the sort of narrowly confined intercessory supplication for deity's private attention that it represents.

How many there may be of these and how serious their feelings may be are precisely the questions that judges have no means of knowing and no right to know had they the means. Certain it is that a judge called upon to judge innocuousness would have more than the ordinary difficulty in stripping his own mind of purely subjective religious beliefs.

*Zorach v. Clauson,* 343 U.S. at 313, 72 S.Ct. at 684. References to the Deity in our ceremonies and on our coinage and seals do not violate the Establishment Clause because they merely reflect this fact of our history and no longer have any potentially entangling theological significance.[2] The prayer on North Carolina's map has not acquired the historical legitimacy that inheres in the national motto or the brief supplication to God used in ceremonies and oaths. We can say with certainty that these ceremonial uses have not led to establishment of religion or political divisiveness. On the other hand, the officially sanctioned prayer at issue here does violate the Establishment Clause because it retains its religious character and carries with it a potential for expansion.

Recognition of the identification of religion with our history must carry with it the realization that religious freedom is a strong part of that history. *See Abington School District v. Schempp,* 374 U.S. at 212–14, 83 S.Ct. at 1565–1567; *Engel v. Vitale,* 370 U.S. at 433–36, 82 S.Ct. at 1268–1269. When government officially approves a prayer, it unconstitutionally favors one religious view over others and breaches the constitutional neutrality mandated by the Establishment Clause. *E. g., Walz v. Tax Commission,* 397 U.S. at 668–69, 90 S.Ct. at 1411; *Abington School District v. Schempp,* 374 U.S. at 222–26, 83 S.Ct. at 1571–1573. The Establishment Clause stands for the proposition that "[i]t is neither sacrilegious nor antireligious to say that each separate government in this country should stay out of the business of writing or sanctioning official prayers and leave that purely religious function to the people themselves and to those the people choose to look to for religious guidance." *Engel v. Vitale,* 370 U.S. at 435, 82 S.Ct. at 1269 (footnote omitted).

By placing an official prayer on its map the state has assumed a purely religious function and has violated the Establishment Clause. We reverse and remand to the district court with instructions to permanently enjoin defendant from including the prayer on future editions of the official map.

*REVERSED AND REMANDED.*

**2.** In a very real sense they may be treated as "grandfathered" exceptions to the general prohibition against officially composed theological statements. Present at the very foundations, few in number, fixed and invariable in form, confined in display and utterance to a limited set of official occasions and objects, they can safely occupy their own small, unexpandable niche in Establishment Clause doctrine. Their singular quality of being rooted in our history and their incapacity to tempt competing or complementary theological formulations by contemporary agencies of government sufficiently cabin them in and distinguish then from new, open–form theological expressions published under the aegis of the state.