NORTH CAROLINA CIVIL LIBERTIES UNION LEGAL FOUNDATION, Philip F. Howerton, Jr., Kathleen M. Arundell, Sharon Samek, Ronald Everhart, James Gronquist, Plaintiffs–Appellees,

v.

H. William CONSTANGY, Defendant–Appellant.

The Catholic League for Religious and Civil Rights, the Rutherford Institute, Concerned Women for America Legal Foundation, the American Jewish Congress, the Anti–Defamation League, Amici Curiae (Two Cases).

Nos. 90–1880, 90–1881.

United States Court of Appeals, Fourth Circuit.

Argued May 6, 1991.

Decided Oct. 23, 1991.

As Amended Nov. 21, 1991.

---

Norma S. Harrell, Special Deputy Atty. Gen., Raleigh, N.C., Robert Adams Singer, Brooks, Pierce, McLendon, Humphrey & Leonard, Greensboro, N.C., argued (Lacy H. Thornburg, Atty. Gen. of N.C., Raleigh, N.C., James Thomas Williams, Jr., Brooks, Pierce, McLendon, Humphrey & Leonard, Greensboro, N.C., on the brief), for defendant–appellant.

George Daly, Charlotte, N.C., argued (Charles E. Johnson, Moore & Van Allen, James Wyatt, Charlotte, N.C., William Simpson, Legal Director, North Carolina Civil Liberties Union Legal Foundation, Inc., Raleigh, N.C., on the brief), for plaintiffs-appellees.

Jay Alan Sekulow, James M. Henderson, Sr., Walter Weber, Free Speech Advocates, Washington, D.C., Mark N. Troobnick, Jordan W. Lorence, Cimron Campbell, Concerned Women for America, Washington, D.C., for amicus curiae Concerned Women for America Legal Foundation.

Larry L. Crain, Brentwood, Tennessee, for amicus curiae The Rutherford Institute.

Douglas W. Davis, Virginia Beach, Va., Stephen H. Galebach, Gen. Counsel, Catholic League for Religious and Civil Rights, Washington, D.C., Thomas Patrick Monaghan, New Hope, Ky., Charles E. Rice, Notre Dame Law School, Notre Dame, Ind., for amicus curiae The Catholic League for Religious and Civil Rights.

Marc D. Stern, Amy Adelson, Lois C. Waldman, American Jewish Congress, New York City, for amicus curiae The American Jewish Congress.

Murray J. Janus, Bremner, Baber & Janus, Richmond, Va., Ruth L. Lansner, Jeffrey P. Sinensky, Steven M. Freeman, Tamar Sadeh Ellison, Anti–Defamation League, New York City, for amicus curiae AntiDefamation League.

Before MURNAGHAN and SPROUSE, Circuit Judges, and MURRAY, Senior District Judge for the District of Maryland, sitting by designation.

OPINION

HERBERT F. MURRAY, Senior District Judge:

Plaintiffs, the North Carolina Civil Liberties Union and several individual attorneys, brought this Establishment Clause challenge against the Honorable H. William Constangy, a judge of the TwentySixth Judicial District of North Carolina, to permanently enjoin him from opening court with prayer. After a bench trial, the district court enjoined the prayer, ruling that Judge Constangy's practice violated the Es-

tablishment Clause. 751 F.Supp. 552. Appellant the Honorable H. William Constangy appeals the district court's ruling.

## I.

The stipulations and the uncontested facts established at trial reveal that after the bailiff would cry him on, Judge Constangy would sit down, turn on a light at his bench, and say, "Let us pause for a moment of prayer." The judge would then bow his head and recite aloud the following prayer:

> O Lord, our God, our Father in Heaven, we pray this morning that you will place your divine guiding hand on this courtroom and that with your mighty outstretched arm you will protect the innocent, give justice to those who have been harmed and mercy to us all. Let truth be heard and wisdom be reflected in the light of your presence with us here today. Amen.

App. 73, 114, 310. Judge Constangy sits in state court and handles primarily criminal misdemeanors. He has been a judge since March, 1989, and has opened court with this prayer since May, 1989.

The district court ruled that the Supreme Court's decision in *Marsh v. Chambers*, 463 U.S. 783, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983), upholding legislative prayer did not apply to this case. The district court applied the three part test of *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). Under *Lemon*, a practice that fails any part of the following three part test is unconstitutional:

> First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster 'an excessive government entanglement with religion.'

*Id.* at 612–613, 91 S.Ct. at 2111 (citations omitted). The district court held that Judge Constangy's prayer failed all three parts of the *Lemon* test: the purpose of Judge Constancy's prayer was religious rather than secular; the prayer did advance religion; and the prayer excessively entangled the government with religion. We agree that the *Lemon* test should be applied to this case and that the prayer at issue violates that test.

## II.

The Establishment Clause of the First Amendment, made applicable to the states through the Fourteenth Amendment, commands that a state "shall make no law respecting an establishment of religion." U.S. Const. amend. I. "Every analysis in this area must begin with consideration of the cumulative criteria developed by the Court over many years." *Lemon*, 403 U.S., at 612, 91 S.Ct. at 2111.

At the outset, we consider whether the reasoning of *Marsh v. Chambers*, 463 U.S. 783, 103 S.Ct. 3330 (1983), should apply to this case. In *Marsh v. Chambers*, the Supreme Court was presented with the question of whether the Nebraska legislature's long-standing practice of opening its legislative sessions with a prayer by a chaplain paid by the State violated the Establishment Clause. The Court noted that sessions of Congress have opened with prayer for over two hundred years, and that the Nebraska legislature has opened with prayer for over one hundred years. Moreover, the Court found that in this case historical evidence shed light on the Framers' intent in drafting the Establishment Clause. In particular, the Court observed that the First Congress established the practice of opening Congress with prayer soon after the Constitution and the Establishment Clause were drafted. Thus, the Court reasoned:

> This unique history leads us to accept the interpretation of the First Amendment draftsmen who saw no threat to the Establishment Clause arising from a practice of prayer similar to that now challenged. We conclude that legislative prayer presents no more potential for establishment than the provision for school transportation, beneficial grants for higher education, or tax exemptions for religious organizations.

*Marsh*, 463 U.S., at 791, 103 S.Ct. at 3336 (citations omitted). The Supreme Court

reasoned that "[in] light of the unambiguous and unbroken history of more than 200 years, there can be no doubt that the practice of opening legislative sessions with prayer has become part of the fabric of our society." *Id.* at 792, 103 S.Ct. at 3336. Thus, legislative prayer is not an establishment of religion but rather, "it is simply a tolerable acknowledgment of beliefs widely held among the people of this country." *Id.*

■ Judge Constangy argues that prayer by a judge is analogous to legislative prayer, and under the holding of *Marsh* it does not violate the Establishment Clause. In support of his argument, Appellant points out that the Supreme Court said:

> The opening of sessions of legislative and *other deliberative public bodies* with prayer is deeply embedded in the history and tradition of this country.

*Id.* at 786, 103 S.Ct. at 3333 (emphasis added). However, the next sentence states that "the practice of legislative prayer has coexisted with the principles of disestablishment of religion and religious freedom." *Id.* The opinion in *Marsh* clearly focuses on legislative prayer and its "unique history." In a later decision, the Supreme Court explained its reasoning in *Marsh:*

> The *Lemon* test has been applied in all cases since its adoption in 1971, except in *Marsh v. Chambers,* 463 U.S. 783, 103 S.Ct. 3330 (1983), where the Court held that the Nebraska Legislature's practice of opening a session with prayer by a chaplain paid by the State did not violate the Establishment Clause. The Court based its conclusion in that case on the historical acceptance of the practice.

*Edwards v. Aguillard,* 482 U.S. 578, 583 n. 4, 107 S.Ct. 2573, 2577 n. 4, 96 L.Ed.2d 510 (1987). The Court did not apply the *Lemon* test because it "did not ... consider that analysis relevant in *Marsh v. Chambers.*" *Lynch v. Donnelly,* 465 U.S. 668, 679, 104 S.Ct. 1355, 1362, 79 L.Ed.2d 604 (1984) (citation omitted). While the Supreme Court has "repeatedly emphasized our unwillingness to be confined to any single test or criterion in this sensitive area," *id.,* the

*Lemon* "trilogy of tests has been applied regularly in the Court's later Establishment Clause cases." *County of Allegheny v. American Civil Liberties Union, Greater Pittsburgh Chapter,* 492 U.S. 573, 592, 109 S.Ct. 3086, 3100, 106 L.Ed.2d 472 (1989).

In its most recent Establishment Clause decision, a majority of the Court held in *Allegheny County* that a creche display bearing a patently Christian message in the Allegheny County Courthouse failed the *Lemon* test. Justice Kennedy's opinion, concurring in part and dissenting in part, which was joined by Chief Justice Rehnquist, and Justices White and Scalia, also applied the *Lemon* test, while pointing out that it should not be the primary guide in this area, but concluded that the display did not violate the Establishment Clause. The various opinions in *Allegheny* shed light on the *Marsh* decision. The opinion of the Court, written by Justice Blackmun and joined by Justices Brennan, Marshall, O'Connor, and Stevens, states:

> In *Marsh,* the Court relied specifically on the fact that Congress authorized legislative prayer at the same time that it produced the Bill of Rights. Justice Kennedy, however, argues that *Marsh* legitimates all "practices with no greater potential for an establishment of religion" than those "accepted traditions dating back to the Founding." ... *Marsh* plainly does not stand for the sweeping proposition Justice Kennedy apparently would ascribe to it, namely, that all accepted practices 200 years old and their equivalents are constitutional today.

*Id.* at 602–603, 109 S.Ct. at 3106 (citation omitted). Thus, the Supreme Court sees the holding of *Marsh* to be predicated on the particular historical circumstances presented in that case. Unlike legislative prayer, there is no similar long-standing tradition of opening courts with prayer. Nor is there any evidence regarding the intent of the Framers of the Bill of Rights with regard to the opening of court with prayer. Appellant states that certain other state court judges in North Carolina open court with prayer. App. 187, 189. Appellant also cites several cases in which judges

had prayed in court but where no First Amendment challenge was presented. However, a few examples of judges who open court with prayer is hardly comparable to the common practice of opening sessions of legislatures with prayer.

Even under Justice Kennedy's broader reading of *Marsh* it would be difficult to say that prayer by a judge in the courtroom is comparable to legislative prayer. In his opinion in *Allegheny*, Justice Kennedy states:

> *Marsh* stands for the proposition, not that specific practices common in 1791 are an exception to the otherwise broad sweep of the Establishment Clause, but rather that the meaning of the Clause is to be determined by reference to historical practices and understandings. Whatever test we choose to apply must permit not only legitimate practices two centuries old but also any other practices with no greater potential for an establishment of religion.

*Allegheny*, 492 U.S., at 670, 109 S.Ct. at 3142 (citation omitted) (Kennedy, J., concurring in part and dissenting in part). Judicial prayer in the courtroom is not legitimated under the Establishment Clause by past history or present practice. Moreover, it cannot be said that judicial prayer has no greater potential for an establishment of religion than legislative prayer. A judge opening court with prayer presents an issue that is markedly different from a chaplain opening legislative sessions with prayer. First, legislative prayer is primarily directed at the legislators themselves, who have decided to have prayer. The Supreme Court commented in *Allegheny:*

> It is worth noting that just because *Marsh* sustained the validity of legislative prayer, it does not necessarily follow that practices like proclaiming a National Day of Prayer are constitutional. See *post*, at 672–673, 109 S.Ct. at 3142–43. Legislative prayer does not urge citizens to engage in religious practices, and on that basis could well be distinguishable from an exhortation from government to the people that they engage in religious conduct.

*Allegheny*, 492 U.S., at 603 n. 52, 109 S.Ct. at 3106, n. 52. In contrast to legislative prayer, a judge's prayer in the courtroom is not to fellow consenting judges but to the litigants and their attorneys. Moreover, a judge presiding over a court is the court. For a judge to engage in prayer in court entangles governmental and religious functions to a much greater degree than a chaplain praying before the legislature. Most importantly, unlike judges, legislators do not have an obligation to be neutral. A legislature is by its very nature partisan and political. Legislators are elected representatives and have a duty to support the interests and viewpoints of their constituents. Thus, in marked contrast to a judge, a legislator has the role of advocate. Because a judge must be a neutral decision-maker, prayer in court by a judge has far more potential for establishing religion than legislative prayer.

### III.

■ Having concluded that the decision in *Marsh v. Chambers* does not require a ruling that judicial prayer does not violate the Establishment Clause, we proceed to analyze this case under the principles of *Lemon v. Kurtzman.* Under the *Lemon* analysis, to be permissible under the Establishment Clause, the practice must have a secular purpose, must neither advance nor inhibit religion in its primary or principal effect, and must not foster an excessive entanglement with religion. 403 U.S., at 612–613, 91 S.Ct. at 2111.

### A.

We first look to the question of whether the challenged action has a secular purpose. "In applying the purpose test, it is appropriate to ask 'whether the government's actual purpose is to endorse or disapprove of religion.'" *Wallace v. Jaffree*, 472 U.S. 38, 56, 105 S.Ct. 2479, 2489, 86 L.Ed.2d 29 (1985) (citation omitted). Judge Constangy contends that the primary purpose of his prayer was to solemnify and dignify the atmosphere in court and to remind those in attendance of the court's search for truth and justice. Observing

that Judge Constangy only recited the prayer in the morning sessions of court and not in the afternoon sessions, the district court found that the purpose of the prayer was not to solemnify the proceedings. The district court concluded that the prayer was religious in nature and did not serve a secular purpose.

Judge Constangy's position is supported by the following language in the Supreme Court's *Lynch v. Donnelly* decision:

> The Court has invalidated legislation or governmental action on the ground that a secular purpose was lacking, but only when it has concluded there was no question that the statute or activity was motivated wholly by religious considerations.

*Lynch*, 465 U.S., at 680, 104 S.Ct. at 1362–63 (citations omitted). Thus, it is not required that the primary purpose of the action be secular. However, "even though [state action] that is motivated in part by a religious purpose may satisfy the first criterion" of the *Lemon* test, the action must have "a clearly secular purpose." *Wallace v. Jaffree*, 472 U.S., at 56, 105 S.Ct. at 2489. Moreover, "it is required that the statement of such purpose be sincere and not a sham." *Edwards v. Aguillard*, 482 U.S., at 586–587, 107 S.Ct. at 2579. Judge Constangy has stated that he composed his courtroom prayer after attending a conference for new judges, where there was a discussion about ways to open court and establish the proper decorum. During this discussion, another North Carolina district court judge mentioned that he opened court with prayer. Affidavits from other judges who attended the conference confirm Judge Constangy's account. Testimony at trial established that the bailiff recited the courtroom cry at both morning and afternoon sessions, but Judge Constangy recited the prayer only in the morning sessions. The court heard different cases in the afternoon. Moreover, there was no evidence that the morning sessions were different from the afternoon sessions with regard to the atmosphere or level of noise in the courtroom. Nor was the atmosphere in Judge Constangy's courtroom different from that of other courtrooms. Based on these facts, the district court concluded that Judge Constangy's purpose was actually religious and not secular. While we recognize that the facts present a close question as to Judge Constangy's actual intent, we cannot say that the district court's finding is clearly erroneous.

Moreover, controlling caselaw suggests that an act so intrinsically religious as prayer cannot meet, or at least would have difficulty meeting, the secular purpose prong of the *Lemon* test. For example, the Supreme Court held in *Wallace v. Jaffree* that an Alabama statute authorizing a period of silence for "meditation or voluntary prayer" in public schools was intended to convey a message of state approval of prayer activities. In *Stone v. Graham*, 449 U.S. 39, 101 S.Ct. 192, 66 L.Ed.2d 199 (1980), the Supreme Court held that a posting of the Ten Commandments in the public schools violated the first prong of the *Lemon* test despite the legislature's requirement that each copy of the Ten Commandments be printed with the words: "The secular application of the Ten Commandments is clearly seen in its adoption as the fundamental legal code of Western Civilization and the Common Law of the United States." *Id.* at 41, 101 S.Ct. at 193 (citation omitted). The Supreme Court ruled:

> The preeminent purpose for posting the Ten Commandments on schoolroom walls is plainly religious in nature. The Ten Commandments are undeniably a sacred text in the Jewish and Christian faiths, and no legislative recitation of a supposed secular purpose can blind us to that fact.

*Id.* at 41, 101 S.Ct. at 193 (footnote omitted). Similarly, the fact that prayer is "undeniably religious", *Hall v. Bradshaw*, 630 F.2d 1018, 1020 (4th Cir.1980), lends less credence to Judge Constangy's stated secular purpose.

### B.

■ Even assuming, *arguendo*, that Judge Constangy's actions survive the first prong of the *Lemon* test, we would still find that the prayer violates the Establishment Clause because it fails the second and third prongs of *Lemon v. Kurtzman*. *See*

*Edwards v. Aguillard,* 482 U.S., at 583, 107 S.Ct. at 2577 (a practice violates the Establishment Clause if it fails any of the three *Lemon* tests).

The second question under *Lemon* is whether the primary effect of the practice is to advance or inhibit religion. "The effect prong asks whether, irrespective of government's actual purpose, the practice under review in fact conveys a message of endorsement or disapproval [of religion]." *Wallace v. Jaffree,* 472 U.S., at 56 n. 42, 105 S.Ct. at 2489 n. 42 (quoting *Lynch v. Donnelly,* 465 U.S., at 690, 104 S.Ct. at 1368 (O'Connor, J., concurring)). Thus, under the second prong of *Lemon,* Judge Constangy's intent is irrelevant. Rather, we must focus on how his prayer was perceived.

When a judge sits on the bench, says "Let us pause for a moment of prayer," and proceeds to recite a prayer in court, clearly the court is conveying a message of endorsement of religion. "Such an endorsement is not consistent with the established principle that the government must pursue a course of complete neutrality toward religion." *Wallace v. Jaffree,* 472 U.S., at 60, 105 S.Ct. at 2491 (footnote omitted). Judge Constangy argues that the prayer he delivers is his personal prayer and thus it does not result in government endorsement of religion. We find Judge Constangy's argument wholly unpersuasive.* A judge wearing a robe and speaking from the bench is obviously engaging in official conduct.

Judge Constangy also argues that his prayer is no more an endorsement of religion than the phrase, "In God We Trust," on coins or the announcement made when many courts are opened, "God save the United States and this Honorable Court." Appellant notes that in *Marsh v. Chambers,* the Supreme Court observed that its own session had opened with the announcement, "God save the United States and this Honorable Court." *Marsh,* 463 U.S., at 786, 103 S.Ct. at 3333. However, these brief references to God have been repeated so often that their religious meaning has diminished so that they are merely examples of "ceremonial deism." *Allegheny,* 492 U.S., at 620, 109 S.Ct. at 3115 (O'Connor, J., concurring). The words, "In God We Trust," on coin and currency have been upheld as a "patriotic and ceremonial" motto with "no theological or ritualistic impact." *Aronow v. United States,* 432 F.2d 242 (9th Cir.1970). As we have stated before, "[r]eferences to the Deity in our ceremonies and on our coinage and seals do not violate the Establishment Clause because they merely reflect this fact of our history and no longer have any potentially entangling theological significance." *Hall v. Bradshaw,* 630 F.2d, at 1023 (footnote omitted). In contrast, prayer in the courtroom by a judge is a religious act by a government official with little historical support. It cannot be considered mere "ceremonial deism". The testimony at trial showed that persons who have heard Judge Constangy's prayer in court felt that the judge wanted those present to pray with him and felt that the judge was endorsing religion. We agree with the district court's finding that the primary effect of Judge Constangy's prayer was to advance and endorse religion.

### C.

The third prong of the *Lemon* test asks whether the challenged practice results in excessive entanglement of the government with religion. It is the view of this court that when a judge prays in court, there is necessarily an excessive entanglement of the court with religion. "[T]he government must pursue a course of complete neutrality toward religion." *Wallace v. Jaffree,* 472 U.S., at 60, 105 S.Ct. at 2491 (footnote omitted). This principle applies with even greater force to the judicial branch because judges are sworn to be neutral arbiters and must apply the law even-handedly without letting bias or personal feeling enter into the decision. For the judge to start each

---

* Of course, Judge Constangy is free to recite a personal prayer in the privacy of his home or chambers before he goes on the bench.

day with a prayer is to inject religion into the judicial process and destroy the appearance of neutrality. In particular, the prayer that Judge Constangy recited gave the appearance of seeking divine intervention in the courtroom proceedings. We have recently held in *United States v. Bakker*, 925 F.2d 728 (4th Cir.1991), that it is impermissible for a judge's personal religious views to enter into a sentencing procedure. In that decision, we explained:

> Our Constitution, of course, does not require a person to surrender his or her religious beliefs upon the assumption of judicial office. Courts, however, cannot sanction sentencing procedures that create the perception of the bench as a pulpit from which judges announce their personal sense of religiosity and simultaneously punish defendants for offending it. Whether or not the trial judge has a religion is irrelevant for purposes of sentencing.

*Id.* at 740. While the case before us concerns the Establishment Clause and does not involve the issue of actual prejudice to a party due to a judge's religious views, the *Bakker* decision is nevertheless instructive as it reflects the dangers of allowing a judge's religious views to enter the courtroom.

Appellant argues that there is no excessive governmental entanglement with religion here because there is no expenditure of government funds toward religion. While the involvement of government funds is a factor to consider in deciding whether there is entanglement, *see Lynch v. Donnelly*, 465 U.S., at 684, 104 S.Ct. at 1365, we do not believe that expenditure of government funds is a requirement for finding a violation of the third prong of *Lemon*. "Entanglement is a question of kind and degree." *Id.* In deciding questions of entanglement, the Supreme Court has been particularly concerned about "ongoing, day-to-day interaction between church and state." *Id.* The instant case does not apparently present a problem of government involvement with the affairs of a particular religious organization. However, Judge Constangy's daily deliverance

in court of a prayer that he himself composed certainly results in an ongoing, day-to-day merging of judicial and religious functions.

Another kind of entanglement may result when the challenged practice leads to divisiveness along religious lines. *Lemon v. Kurtzman*, 403 U.S., at 622, 91 S.Ct. at 2116. "[P]olitical division along religious lines was one of the principal evils against which the First Amendment was intended to protect." *Id.* (citation omitted). We have stated before that "[b]y placing its imprimatur on the particular kind of belief embodied in any prayer, the state necessarily offends the sensibilities not only of nonbelievers but of devout believers among the citizenry who regard prayer 'as a necessarily private experience.'" *Hall v. Bradshaw*, 630 F.2d, at 1021 (quoting *Abington School District v. Schempp*, 374 U.S. 203, 283–85, 83 S.Ct. 1560, 1603–05, 10 L.Ed.2d 844 (1963) (Brennan, J., concurring)). The in-court recitation by the judge of a prayer written by the judge puts the court's approval on a particular kind of belief. As evidenced by the record, many people who have come before Judge Constangy are offended by his prayer, either because they do not share his beliefs or because they prefer to pray in private and feel uncomfortable with public prayer. We are persuaded on the final element of *Lemon* that Judge Constangy's prayer has the potential for entangling the state in divisiveness along religious lines.

Thus, as explained above, Judge Constangy's practice of praying in court fails the third prong of *Lemon* by excessively entangling the government with religion.

## IV.

We conclude that the courtroom prayer at issue in this case violates the Establishment Clause of the United States Constitution. Although the barrier between church and state erected by the Clause is "blurred, indistinct, and variable," *Lynch v. Donnelly*, 465 U.S., at 679, 104 S.Ct. at 1362 (quoting *Lemon*, 403 U.S., at 614, 91 S.Ct. at 2112), the practice at issue in this case is clearly unconstitutional under all the tests

and criteria developed by the Supreme Court in the Establishment Clause area. Judge Constangy's prayer in the courtroom violates the tests set forth in *Lemon* and results in governmental endorsement of religion. Accordingly, the judgment of the district court is

AFFIRMED.